LINN, Circuit Judge,
concurring.
I join the court’s opinion invalidating the claims of the '540 patent only because I am bound by the sweeping language of the test set out in Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 U.S. -, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012). In my view, the breadth of the second part of the test was unnecessary to the decision reached in Mayo. This case represents the consequence — perhaps unintended' — of that broad language in excluding a meritorious invention from the patent protection it deserves and should have been entitled to retain.
It has long been established that “[l]aws of nature, natural phenomena, and abstract ideas are not patentable.” Alice Corp. v. CLS Bank Int’l, — U.S. -, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014) (citations omitted). In Mayo, the Supreme Court set forth a two-step framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. The first step looks to determine whether claims are directed to a patent-ineligible concept. Mayo, 132 S.Ct. at 1297. If they are, the second step is to consider whether the additional elements recited in the claim “transform the nature of the claim” into a patent-eligible application by reciting an “inventive concept” that is “sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.” Id. at 1294.
In applying the second part of the test, the Supreme Court in Mayo discounted, seemingly without qualification, any “[p]ost-solution activity that is purely conventional or obvious,” id. at 1299 (original alterations omitted). This was unnecessary in Mayo, because doctors were already performing in combination all of the claimed steps of administering the drug at issue, measuring metabolite levels, and adjusting dosing based on the metabolite levels, id.
In Diamond v. Diehr, the Supreme Court held that “a new combination of steps in a process may be patentable even though all the constituents of the combination were well-known and in common use before the combination was made.” 450 U.S. 175, 188, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981). As Mayo explained: Diehr “pointed out that the basic mathematical equation, like a law of nature, was not patentable. But [Diehr ] found the overall process patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole.” Mayo 132 S.Ct. at 1298. Despite that recognition, Mayo discounted entirely the “conventional activity” recited in the claims in that case because the steps “add nothing specific to the laws of nature other than what is well-understood, routine, conventional activity, previously engaged in by those in the field.” Id. at 1299. While that conclusion might have been warranted in that case, given the fact that the “conventional activities” in Mayo were the very steps that doctors were already doing— *1381 administering the drug at issue, measuring metabolite levels, and adjusting dosing based on the metabolite levels — the Supreme Court did not limit its ruling to those particular facts and circumstances.
The Supreme Court’s blanket dismissal of conventional post-solution steps leaves no room to distinguish Mayo from this case, even though here no one was amplifying and detecting paternally-inherited cffDNA using the plasma or serum of pregnant mothers. Indeed, the maternal plasma used to be “routinely discarded,” '540 patent col. 1 ll.50-53, because, as Dr. Evans testified, “nobody thought that fetal cell-free DNA would be present.”
It is hard to deny that Sequenom’s invention is truly meritorious. Prior to the '540 patent, prenatal diagnoses required invasive methods, which “presented] a degree of risk to the mother and to the pregnancy.” Id. at col. 1 ll.16-17. The available “techniques [we]re time-consuming or require[d] expensive equipment.” Id. at col. 1 ll.17-37. Dr. Mark Evans testified that “despite years of trying by multiple methods, no one was ever able to achieve acceptable success and accuracy.” In a groundbreaking invention, Drs. Lo and Wainseoat discovered that there was cell-free fetal DNA in the maternal plasma. The Royal Society lauded this discovery as “a paradigm shift in non-invasive prenatal diagnosis,” and the inventors’ article describing this invention has been cited well over a thousand times. The commercial embodiment of the invention, the MaterniT21 test, was the first marketed non-invasive prenatal diagnostic test for fetal aneuploidies, such as Down’s syndrome, and presented fewer risks and a more dependable rate of abnormality detection than other tests. Unlike in Mayo, the '540 patent claims a new method that should be patent eligible. While the instructions in the claims at issue in Mayo had been widely used by doctors — they had been measuring metabolites and recalculating dosages based on toxicity/inefficacy limits for years — here, the amplification and detection of cffDNA had never before been done. The new use of the previously discarded maternal plasma to achieve such an advantageous result is deserving of patent protection. Cf. Rebecca S. Eisenberg, Prometheus Rebound: Diagnostics, Nature, and Mathematical Algorithms, 122 Yale L.J. Online 341, 343-44 (2013) (noting that despite Mayo’s declaration that a claim to “a new way of using an existing drug” is patentable, Mayo, 132 S.Ct. at 1302, it is unclear how a claim to new uses for existing drugs would survive Mayo’s sweeping test).
In short, Sequenom’s invention is nothing like the invention at issue in Mayo. Sequenom “effectuate[d] a practical result and benefit not previously attained,” so its patent would traditionally have been valid. Le Roy v. Tatham, 63 U.S. 132, 135-36, 22 How. 132, 16 L.Ed. 366 (1859) (quoting Househill Coal & Iron Co. v. Neilson, Webster’s Patent Case 673, 683 (House of Lords 1843)); Le Roy v. Tatham, 55 U.S. 156, 175, 14 How. 156, 14 L.Ed. 367 (1852) (same); see generally Jeffrey A. Lefstin, Inventive Application: a History, 67 Fla.L.Rev. (forth-coming 2015), available at http://ssrn.com/abstract=2398696 (last visited June 10, 2015) (analyzing traditional notions of patent eligibility of newly discovered laws of nature). But for the sweeping language in the Supreme Court’s Mayo opinion, I see no reason, in policy or statute, why this breakthrough invention should be deemed patent ineligible.